## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.
EDUCATION REENVISIONED BOCES;
RIVERSTONE ACADEMY,

     *Plaintiffs*,

vs.

SUSANA CORDOVA, in her official capacity as Commissioner of Education;
REBECCA MCCLELLAN,
YAZMIN NAVARRO,
LISA ESCARCEGA,
KATHY GEBHARDT,
SHERRI WRIGHT,
KRISTI BURTON BROWN,
STEVE DURHAM,
KARLA ESSER, and
KATHY PLOMER, in their official capacities as members of the Colorado State Board of Education.

     *Defendants*.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

1.    The State of Colorado requires its publicly funded school system to discriminate on the basis of religion. Education entrepreneurs who wish to provide tuition-free religious education are barred from receiving publicly available contracts. Despite the United States' history of forbidding religious discrimination in education, Colorado has enacted state law prohibitions with a clear animus toward people of faith. Colorado law denies parents access to innovative educational opportunities for their children solely on the basis of religion, unfairly trapping kids in failing schools as "creature[s] of the state," forced to accept instruction from the

State's preferred teachers. *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925).

2.      Colorado law requires the State to unconstitutionally discriminate on the basis of religion when awarding government contracts. The state constitution and statutes prohibit school districts and BOCES from contracting with religious schools to provide educational services, in violation of religious schools' free exercise rights as well as the rights of the religious students and parents who would attend that school.

3.      That constitutional violation flows from the Colorado Constitution's unlawful Blaine amendment, which says no state entity "shall ever make any appropriation, or pay from any public fund or moneys whatever, anything in aid of any church or sectarian society, or for any sectarian purpose, or to help support or sustain any school, academy, seminary, college, university or other literary or scientific institution, controlled by any church or sectarian denomination whatsoever." COLO. CONST. art. IX, § 7. The Colorado Constitution further requires that "[n]o person shall be required to attend or support any ministry or place of worship, religious sect or denomination against his consent." COLO. CONST. art. II, § 4.

4.      Together, these provisions, as enforced by Colorado officials, operate as a complete and total ban on state funding of religious schools.

5.      This means that school districts and BOCES in Colorado are categorically forbidden from contracting with religious groups for the provision of

educational services in the state simply because of those groups' exercise of their religion. This is direct and unconstitutional discrimination against religion in violation of the Free Exercise Clause of the First Amendment.

6.     Such a blanket prohibition violates the Free Exercise Clause of the United States Constitution by excluding religious schools from otherwise available benefits on the basis of their religion. The Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson as next friend of O. C. v. Makin*, 596 U.S. 767, 778 (2022).

7.     "The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458 (2017) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533, 542 (1993)). "[D]isqualifying otherwise eligible recipients from a public benefit solely because of their religious character," as Colorado does, is unequal treatment sufficient to trigger this strictest scrutiny, which Colorado's law cannot withstand. *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 475 (2020) (internal quotation marks omitted).

## PARTIES

8.     Plaintiff Education ReEnvisioned BOCES ("ERBOCES") is a Board of Cooperative Education Services, a state-authorized entity that provides funding for brick-and-mortar schools, online schools, and homeschool enrichment programs

3

across Colorado. ERBOCES has the power to create contract schools under Colorado Statute § 22-32-122.

9.     Plaintiff Riverstone Academy is a tuition-free contract school operating under a contract with ERBOCES. Riverstone Academy is a Christian school that provides an educational program with a Christian foundation.

10.    Together, Plaintiffs are education entrepreneurs serving local communities by providing parents the opportunity to educate their children in an innovative school program whose curriculum includes religion.

11.    Defendants Rebecca McClellan, Yazmin Navarro, Lisa Escarcega, Kathy Gebhardt, Sherri Wright, Kristi Burton Brown, Steve Durham, Karla Esser, and Kathy Plomer are members of the Colorado State Board of Education. They are responsible for the general supervision of publicly funded schools in Colorado under Article 9, Section 1 of the Colorado Constitution and for making all rules and regulations for the enforcement of Colorado's Public School Finance Act, *see* C.R.S. § 22-54-120(1).

12.    Defendant Susana Cordova is the Commissioner of Education and is responsible for determining pupil counts for school funding, performing audits, and clawing back state funds. 1 CCR 301-39-R-8.00, *et seq*.

## JURISDICTION AND VENUE

13.    This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983.

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

15.    Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b) because Defendants reside in Colorado and all events or omissions giving rise to the claim occurred in Colorado.

## FACTUAL ALLEGATIONS

16.    ERBOCES is a BOCES: a Board of Cooperative Education Services. BOCES were created in Colorado by the Boards of Cooperative Services Act of 1965, C.R.S. § 22-5-103, *et. seq.*, and serve multiple functions with the state educational system. Colorado granted each BOCES, including ERBOCES, flexibility. That flexibility provides education entrepreneurs the ability to innovate and respond quickly to the evolving needs of parents and students, and to work cooperatively to respond to shifting student population needs at the community level. Relevant here, a BOCES can act as local education agencies and can apply for, receive, and administer state and federal educational grants. *See* C.R.S. § 22-5-114.5. A BOCES can also create contract schools.

### Contract Schools

17.    Under C.R.S. § 22-5-108(1)(A) and C.R.S. § 22-32-122, a BOCES can:

contract with another district, with the governing body of a state college or university, with the tribal corporation of an Indian tribe or nation, with a federal agency or officer, with a county, city, or city and county, or with a natural person, body corporate, or association for the performance of a service, including an educational service, an activity, or an undertaking that a school may be authorized by law to perform or undertake.

5

18.    This authority, which is also granted to school districts in Colorado, can be used to create so-called "contract schools." Contract schools are schools operated by private entities according to a contract with a school district or a BOCES. They are not charter schools and are not governed by Colorado's charter school act. *See* C.R.S. § 22-30.5-103(2).

19.    The mission of ERBOCES is to develop and deliver services to BOCES, districts, and authorized schools to expand availability and access to quality, innovative public education programs. It provides families more choice through collaboration, accountability, and support not found elsewhere in Colorado.

20.    ERBOCES contracts with multiple entities to provide educational services, including with entities that provide tuition-free, full-time education to children.

21.    ERBOCES awards contracts based on applications submitted by the entities seeking to become a contract school. Any entity that wishes to become a contract school must submit a standardized application, which is reviewed by ERBOCES. If ERBOCES approves the application, the entity is awarded a contract and becomes a contract school.

22.    The application process is open to all. ERBOCES's website provides links for anyone to inquire into applying to start a contract school or educational program.[1]

---

[1]    *Start A School or Program*, Education ReEnvisioned BOCES, https://www.edreenvisioned.org/schools-programs/start-a-school-or-program (last visited February 10, 2026).

23.    ERBOCES has used its contract authority to authorize a number of diverse educational programs. These include brick and mortar schools like Riverstone and Pueblo Classical Academy, online schools like Williamsburg Academy, and homeschool enrichment programs like the Colorado Agribusiness & Equine Science Academy and the La Luz microschool.

24.    The Colorado Department of Education (CDE) provides funding to ERBOCES for these contract schools. Each year, ERBOCES submits funding requests for its contract schools, listing the number of pupils enrolled at each school.

25.    CDE reviews those funding requests and provides funding for each pupil enrolled at a contract school. The funding is awarded on a per-pupil basis, meaning schools receive a set amount of funding for each pupil. ERBOCES submits a pupil count to the state, is awarded funding for each pupil at one of its schools, and then directs the funding to each contract school.

26.    CDE has audit authority over the administration of funds by a BOCES.

27.    Thus, in the event that any funding is provided in error—for example, if the pupil count submitted to CDE is too high for any reason—CDE will claw back ERBOCES's funding. This is accomplished by a deduction from the subsequent years' funding.

**Riverstone Academy**

28.    Riverstone is a tuition-free elementary school that blends strong academics with classical values, hands-on trades-based learning, and a Christian foundation to help students grow in both knowledge and character. Its innovative

7

approach to education responds to community interest local to Pueblo County, Colorado by focusing on creativity, problem-solving, virtue, and moral development. Parents opt to send their students to Riverstone for a well-rounded, values-driven education that equips young learners for lifelong success.

29.    Riverstone is located in Pueblo, Colorado, and it provides tuition-free education to 29 pupils from kindergarten to fifth grade.

30.    The school aims to maintain high academic expectations while cultivating moral character, personal responsibility, and spiritual growth within a structured, relationship-based setting.

31.    Christian faith is an integral part of the school's culture and instruction, reflecting the belief that intellectual development and spiritual formation belong together. Classes perform Christian devotions, curricula are informed by a Christian worldview, and students are encouraged with and taught Biblical principles.

32.    Riverstone submitted an application to ERBOCES to serve as a tuition-free contract school in Pueblo County, Colorado.

33.    In August 2025, following completion of the standard review process, ERBOCES entered a contract with Riverstone Academy to provide tuition-free education to the parents and children of Pueblo County, Colorado.

34.    After ERBOCES contracted with Riverstone, it submitted its annual request for state funding to CDE. ERBOCES included Riverstone Academy's students in its request.

35.     In response to its funding request, ERBOCES received a letter from CDE stating that Colorado law requires ERBOCES to refuse to contract with any religious school. *See* Ex. A.

36.     Specifically, the letter informed ERBOCES that providing funding to Riverstone Academy would violate the Colorado Constitution and Colorado statutory law because Riverstone is a Christian school.

37.     The letter opened by stating that, "[a]ccording to public advertising of the school, Riverstone Academy is not operating in a nonsectarian nature." *Id*. at 1. To support this proposition, the letter cited Riverstone's website, which says the school has a "Christian foundation." *Id.* The letter also listed curricula used by Riverstone and described them as "sectarian in nature." *Id*. at 2.

38.     The letter warned ERBOCES that,

> Public schools are generally required to be nonsectarian in nature. COLO. CONST. art. IX, § 8 ("No sectarian tenets or doctrines shall ever be taught in the public school[.]"); see also U.S. CONST. amend. I; COLO. CONST. art. II, § 4. ERBOCES is a public entity bound by the federal and state constitutions. Thus, any school that ERBOCES operates must be nonsectarian in nature. *Id*.

39.     It further explained that contracting with a Christian school would violate Article IX, Section 8 and Article II, Section 4 of the Colorado Constitution as well as C.R.S. § 22-32-122(3)(a) because a contract school "can only operate in a manner that a public school is legally authorized to operate." *Id*. at 3.

40.     The letter concluded by stating that CDE was concerned that ERBOCES could not properly submit all its required funding forms "because Riverstone

Academy is not meeting the same requirements and standards that apply to public schools." *Id*.

41.    ERBOCES responded to CDE's letter with an email explaining that the United States Constitution prohibits discriminating against Riverstone on account of its religious affiliation. ERBOCES asserted that refusing to contract with a contract school applicant solely on the basis of religion would violate the First Amendment. ERBOCES further asserted that examining the curriculum of an applicant school to determine if it is "sectarian" would unconstitutionally entangle the state with religion.

42.    CDE never responded to ERBOCES's email.

## Funding and Request for Clarification

43.    Soon after ERBOCES received the letter from CDE warning that funding Riverstone would violate state law, CDE approved ERBOCES's funding request, including funding for Riverstone's pupils.

44.    Immediately after approving the funding request, CDE notified ERBOCES that it would be subjected to an audit of its pupil count for the upcoming school year.

45.    If the audit results in a determination that ERBOCES requested funding for any pupils in violation of state law, CDE will claw back the funding for those pupils.

46.    In summary, CDE, in sequence: 1) informed ERBOCES that funding pupils at Riverstone Academy would violate state law; 2) granted ERBOCES funding

10

for pupils at Riverstone Academy; and 3) subjected ERBOCES to an audit that will result in the claw back of any funds disbursed in violation of state law.

47.    On February 2, 2026, ERBOCES sent a second letter to CDE, this time requesting clarification of its obligations under state law. *See* Ex. B.

48.    This letter stated that "[t]he CDE has, within a matter of weeks, warned ERBOCES not to fund Riverstone, then given ERBOCES the money to fund Riverstone. As best we can tell, if we fail to navigate this impossible situation, CDE will claw back our state funding. Putting ERBOCES and Riverstone in this position is manifestly unfair." *Id*. at 1.

49.    The letter therefore asked CDE to clarify whether funding for Riverstone would be clawed back on the basis of the school's religious identity. ERBOCES requested a response to its letter by February 13, 2026.

50.    CDE did not respond to the letter.

**Colorado Law Prohibits Funding Religious Schools**

51.    The letter from CDE regarding Riverstone Academy correctly summarized Colorado law: ERBOCES is forbidden by the Colorado Constitution and Colorado statutes from contracting with religious schools.

52.    The Colorado Constitution includes a Blaine Amendment, ratified in 1876 and set out in Article IX, Section 7, which provides the following:

> Neither the general assembly, nor any county, city, town, township, school district or other public corporation, shall ever make any appropriation, or pay from any public fund or moneys whatever, anything in aid of any church or sectarian society, or for any sectarian purpose, or to help support or sustain any school, academy, seminary, college, university or other literary or scientific institution, controlled by

any church or sectarian denomination whatsoever; nor shall any grant or donation of land, money or other personal property, ever be made by the state, or any such public corporation to any church, or for any sectarian purpose.

53.    Article II, Section 4 of the Colorado Constitution requires that "[n]o person shall be required to attend or support any ministry or place of worship, religious sect or denomination against his consent."

54.    These two provisions operate as express and total prohibitions on any state funding flowing to any religious school. They function to prohibit both CDE and ERBOCES from providing any funding to Riverstone Academy.

55.    Additionally, C.R.S. § 22-32-122 requires that ERBOCES only enter contracts for educational services that "meet the same requirements and standards that would apply" if the service was performed by ERBOCES directly.

56.    C.R.S. § 22-32-122 enacts in statute the above prohibition from the Colorado Constitution by imposing the requirements of Article IX, Section 7 and Article II, Section 4 on ERBOCES.

57.    CDE enforces Article IX, Section 7; Article II, Section 4; and C.R.S. § 22-32-122 through its funding authority and via audits of funded schools. Based on CDE's letter, if an audit determines that ERBOCES has provided funding to a religious school, any such funding will be deducted from ERBOCES's funding in a subsequent year.

58.    Taken together, these provisions and the enforcement mechanisms prohibit the creation of a religious contract school in Colorado and punish any entity that attempts to create such a school.

59.    ERBOCES and Riverstone Academy have created such a school and will imminently be the subject of legal enforcement by CDE.

### The Rights of Parents and Students

60.    As a BOCES, ERBOCES answers to and advocates for the interests of its constituency of parents and their children.

61.    ERBOCES serves the students and parents of Colorado by providing a host of educational options, both traditional and non-traditional. ERBOCES authorizes a diverse set of educational options, including brick and mortar schools, online schools, and homeschool enrichment programs. These options meet the needs of many students across the state.

62.    ERBOCES uses its authority to create contract schools in order to meet the needs of children and parents across the state who seek tuition-free, state-funded educational opportunities. Many of ERBOCES's innovative schools and programs offer specialized models like dyslexia support, classical academies, online programs, and homeschool enrichment.

63.    Many of ERBOCES's students and their parents are religious and wish to send their children to a state-funded, tuition-free religious school if the state permitted funding.

64.    That includes Christian parents who have enrolled their students at Riverstone, as well as other students served by ERBOCES who would enroll at a state-funded religious school of a similar or different denomination. None of those

parents or students can do so because Colorado forbids any state funding from flowing to a religious school.

65.    Those seeking religious education in Colorado must pay potentially prohibitive tuition if they wish to live out their religious convictions and attend a religious school. Because of Colorado's stifling ban on funding religious schools, the only state-funded, tuition-free schools in the state are secular. Students are therefore left to choose between exercising their religious beliefs and incurring potentially large fees for tuition.

66.    The state permits contract schools to meet any need identified by a BOCES or school district except the need for religious education.

67.    Colorado students served by ERBOCES are barred from attending religious contract schools because of the State's enforcement and threats of enforcement against ERBOCES.

## FIRST CLAIM FOR RELIEF
### Free Exercise
### (ERBOCES and Riverstone)

68.    Plaintiffs incorporate the preceding allegations by reference.

69.    The Free Exercise Clause of the U.S. Constitution's First Amendment, as incorporated against the States through the U.S. Constitution's Fourteenth Amendment, prohibits discrimination on the basis of religion.

70.    Colorado law expressly violates the Free Exercise Clause by prohibiting ERBOCES from contracting with religious schools.

14

71.    Article IX, Section 7 and Article II, Section 4 of the Colorado Constitution, along with statutes enforcing their requirements, "expressly discriminat[e] against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character." *Trinity Lutheran*, 582 U.S. at 462.

72.    While a secular school may freely apply to become a contract school, religious schools are excluded from this process solely on the basis of their religious identity.

73.    The Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson*, 596 U.S. at 778.

74.    Explicit discrimination against religion of this kind is subject to strict scrutiny, which the relevant laws cannot withstand.

75.    Further, the unconstitutional provisions of Colorado's constitutions include a Blaine Amendment adopted out of overt hostility to particular religious denominations.

76.    State provisions prohibiting aid to "sectarian" institutions date back to the 1870s and were enacted out of hostility to certain religious groups. Such provisions were "born of bigotry" against religion, especially the Catholic church. *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 482 (2020).

77.    Colorado's Blaine amendment shares this "shameful pedigree." *Mitchell v. Helms*, 530 U.S. 793, 828 (2000). It was enacted out of anti-religious bigotry. The

State's interpretation and enforcement of its Blaine Amendment evinces this hostility to religion even today.

78.    State laws that demonstrate hostility to religion violate the Free Exercise Clause.

79.    Therefore, Colorado law and CDE's actions against ERBOCES and Riverstone also violate Plaintiffs' rights under the Free Exercise Clause by enforcing state constitutional provisions enacted out of anti-religious animus.

80.    Though Riverstone has been funded for the upcoming school year, CDE's letter to ERBOCES makes clear that those funds will imminently be clawed back following the ongoing audit. CDE has unambiguously expressed its view that funding and operating Riverstone violates state law, and CDE rigorously enforces the relevant prohibitions. Moreover, CDE has specifically warned ERBOCES that funding and operating Riverstone violates the law.

81.    Riverstone and ERBOCES therefore have a credible fear that the law will be enforced against them and any funding for Riverstone will be clawed back.

82.    Such an enforcement and claw back would be devastating for both Riverstone and ERBOCES.

83.    For Riverstone, enforcement would mean the end of the school as it currently exists. It would be forced to choose between the exercise of its religious beliefs and its ability to continue as a contract school.

84.    For ERBOCES, an enforcement and claw back proceeding would result in underfunding for all of its programs in a subsequent year. Any amount allocated

to Riverstone would be deducted from a subsequent year's funding, meaning all of ERBOCES's other schools would have less money available.

85.     Any enforcement would also compel ERBOCES to violate the United States Constitution by discriminating against Riverstone on the basis of religion.

86.     Further, Colorado's equivocal actions have left ERBOCES in a funding limbo. While it has been promised the flexibility to innovate and provided money to use to fund Riverstone, actually using that money will almost certainly result in an enforcement action and claw back. This uncertainty imposes financial and accounting difficulties on ERBOCES that should be resolved with a declaratory judgment enforcing its rights.

87.     Therefore, Colorado law and CDE's actions against ERBOCES and Riverstone violate Plaintiffs' rights under the Free Exercise clause.

### SECOND CLAIM FOR RELIEF
### Establishment Clause
### (ERBOCES and Riverstone)

88.     Plaintiffs incorporate the preceding allegations by reference.

89.     The Establishment Clause of the U.S. Constitution's First Amendment, as incorporated against the States through the U.S. Constitution's Fourteenth Amendment, prohibits laws that foster "an excessive governmental entanglement with religion." *Larson v. Valente*, 456 U.S. 228, 252 (1982).

90.     This includes laws that require government agencies to "trol[l] through a person's or institution's religious beliefs" to evaluate whether they are truly religious. *Univ. of Great Falls v. N.L.R.B.*, 278 F.3d 1335, 1343 (D.C. Cir. 2002).

91.     The Supreme Court has noted that the Establishment Clause also likely prohibits a state from "scrutinizing whether and how a religious school pursues its educational mission." *Carson as next friend of O. C. v. Makin*, 596 U.S. at 787.

92.     CDE's letter to ERBOCES regarding Riverstone Academy cited Riverstone's curriculum as one reason the school could not receive state funds.

93.     To the extent the Colorado Constitution and any implementing statutes require school districts and BOCES to scrutinize contract school applicants' curricula to determine if they are religious, they violate the Establishment Clause.

94.     Therefore, Colorado law and CDE's actions against ERBOCES and Riverstone violate Plaintiffs' rights under the Establishment Clause.

### THIRD CLAIM FOR RELIEF
### Free Exercise of Parents and Students
### (ERBOCES and Riverstone)

95.     Plaintiffs incorporate the preceding allegations by reference.

96.     Religious parents and students in Colorado have a constitutional right to be free from discrimination based on their religion.

97.     Parents and students across Colorado are able to access specialized tuition-free, state-funded educational offerings for their children or, if they cannot access them, able to form entities that can apply to be contract schools offering the specialized educational services.

98.     However, religious parents and students cannot access religious education or form entities that offer religious education because the Colorado

Constitution and Colorado statutes prohibit state funding from being provided to religious schools.

99. This is religious discrimination in violation of the Free Exercise Clause.

100. ERBOCES has the requisite relationship to assert those rights because it acts like a school district to represent and serve the interests of parents and students in Colorado. Riverstone has the requisite relationship with its students because it is a school and represents the interests of its pupils.

101. Colorado law and CDE's actions against ERBOCES and Riverstone on the basis of religion affiliation prevent Christian parents and students who do or might send their children to Riverstone from accessing a generally available public benefit.

102. In addition, because of Colorado law and CDE's enforcement against ERBOCES, all religious parents and students in Colorado are unable to access religious contract schools or programs. Regardless of specific religious beliefs, these parents and students cannot form contract schools or programs on their own, but rather must go through ERBOCES.

103. Individual parents and students are hindered from challenging Colorado's unconstitutional law because enforcement of that law has prevented the formation of publicly funded religious schools to which those parents and students might apply.

104. "It is both insulting and legally unsound to tell parents that they must abstain from public education in order to raise their children in their religious faiths,

19

when alternatives can be prohibitively expensive and they already contribute to financing the public schools." *Mahmoud v. Taylor*, 606 U.S. 522, 562, 145 S. Ct. 2332, 2360 (2025)

105.    Because Colorado law prohibits funding to religious schools regardless of the particular religious beliefs at issue, it is not necessary for particular religious parents and students to participate in this action.

106.    ERBOCES and Riverstone are therefore properly situated to vindicate the First Amendment Free Exercise rights of the parents and students they serve.

107.    Therefore, Colorado law and CDE's actions against ERBOCES and Riverstone violate the rights of parents and students under the Free Exercise Clause.

**FOURTH CLAIM FOR RELIEF**
**Fourteenth Amendment – Equal Protection**
**(ERBOCES and Riverstone)**

108.    Plaintiffs incorporate the preceding allegations by reference.

109.    State action that deprives a person of a publicly available benefit on the basis of religious affiliation violates the Equal Protection Clause of the U.S. Constitution's Fourteenth Amendment.

110.    Colorado law and CDE's actions against ERBOCES and Riverstone on the basis of religious affiliation prevent Christian parents and students who do or might send their children to Riverstone from accessing a generally available public benefit.

111.    In addition, Colorado law and CDE's actions against ERBOCES and Riverstone deprive religious parents of the opportunity to attend a publicly funded religious school regardless of any specific religious affiliation.

112.    The Supreme Court has upheld claims by school districts challenging state laws that govern their affairs in violation of the Fourteenth Amendment rights of their students.

113.    ERBOCES and Riverstone are therefore properly situated to vindicate the Fourteenth Amendment equal protection rights of the parents and students it serves.

114.    Therefore, Colorado law and CDE's actions against ERBOCES and Riverstone violate the rights of parents and students under the Fourteenth Amendment's Equal Protection Clause.

## PRAYER FOR RELIEF

Plaintiffs ask this Court to enter judgment against Defendants and to provide the following relief:

1.    A declaration that, as applied to Plaintiffs, Article IX, Section 7 and Article II, Section 4 of the Colorado Constitution violate the First and Fourteenth Amendments to the United States Constitution.

2.    A declaration that Colorado may not claw back funding from ERBOCES based on any enforcement of the above provisions.

3.    Issue a permanent injunction prohibiting Defendants, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or

participation with them, including their successors in office, from enforcing Article IX, Section 7 of the Colorado Constitution, Article II, Section 4 of the Colorado Constitution, and C.R.S. § 22-32-122 against Plaintiffs, including by otherwise pursuing, charging, issuing, or assessing any penalties, fines, assessments, claw backs, investigations, audits, or other enforcement actions against Plaintiffs.

4.    Award the Plaintiffs' costs and the expenses of this action, including reasonable attorneys' fees under 42 U.S.C. § 1988.

5.    Issue the requested injunctive relief without a condition of bond or other security being required of the Plaintiffs; and

6.    Grant any other relief that it deems equitable and just under the circumstances.

Respectfully submitted this 13th day of February, 2026.

_s/ Michael H. McGinley_
Michael H. McGinley*
DECHERT LLP
1900 K Street, NW, Washington, DC, United States of America 20006-1110
(202) 261-3378
michael.mcginley@dechert.com

_Attorneys for Plaintiff Riverstone Academy_

David J. Hacker
Hiram S. Sasser, III
Jeremiah G. Dys
Holly M. Randall
First Liberty Institute
2001 W. Plano Parkway
Suite 1600
Plano, TX 75075

_s/ Michael L. Francisco_
Michael L. Francisco
James Compton
FIRST & FOURTEENTH PLLC
800 Connecticut Avenue, NW
Suite 300
Washington D.C. 20006
(202) 998-1978
michael@first-fourteenth.com
james@first-fourteenth.com

Lincoln Davis Wilson*
FIRST & FOURTEENTH PLLC
784 S. Clearwater Loop # 8011
Post Falls, ID 83854
(719) 234-0938
lincoln@first-fourteenth.com

(972) 941-4444
hsasser@firstliberty.org
jdys@firstliberty.org
hrandall@firstliberty.org

*Attorneys for Plaintiff Education
Reenvisioned BOCES*

Rebekah Miller*
Miller Farmer Carlson
5665 Vessey Road
Colorado Springs, CO 80908
(719) 439-4310
rebekah@millerfarmercarlson.com
*Attorneys for Plaintiff Education
Reenvisioned BOCES*

*Application for admission pending