IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-595-SKC-MDB

EDUCATION REENVISIONED BOCES, et al.,

     Plaintiffs,

v.

SUSANA CÓRDOVA, in her official capacity as Colorado Commissioner of
Education, et al.,

     Defendants.

## MOTION TO DISMISS UNDER RULE 12(b)(1) & (6)

### CONFERRAL

The parties have conferred in good faith, discussing the basis for this motion

via videoconference at their Rule 26(f) conference and in correspondence thereafter.

Plaintiffs disagree with the grounds herein and thus oppose this motion.

### INTRODUCTION

Education ReEnvisioned BOCES ("ERBOCES") is a public entity, formed as a

co-op among school districts to carry out the mutual efforts of those school districts.

By law, it is authorized to procure services via contract as it carries out its own

statutory operations (for example, contracting for instructors to teach in its public-

school classrooms). Also by law, ERBOCES has no general power to sponsor,

subsidize, or authorize private education.

ERBOCES appears to engage in a number of activities that are not authorized

by law. The Colorado Department of Education ("CDE") has begun its routine process

1

for auditing ERBOCES's activities for compliance with certain funding requirements. Under that process, CDE will make a determination on the funding eligibility of ERBOCES's programs at some point late this year or (more likely) early next year. Rather than wait on this orderly administrative process, ERBOCES instead (1) demanded assurances that the audit would not relate to religion, and (2) preemptively sued *despite* receiving the very assurances it requested.

This knee-jerk, preemptive lawsuit should be dismissed under Rule 12. CDE has made no determinations that could harm ERBOCES, will not make any such determinations for the better part of a year (at best), and has expressly assured ERBOCES that its determinations will not rely on the grounds ERBOCES challenges here. The complaint's theory of pre-enforcement standing is thus meritless. Further, Plaintiffs would lack standing anyway—because no valid contract exists to support Riverstone Academy's standing to sue, because political subdivisions do not have First Amendment rights to assert against the state, and because these Plaintiffs have not pleaded a basis for third-party standing.

**REQUEST FOR EVIDENTIARY HEARING**

As to two issues—(1) pre-enforcement standing and (2) Riverstone Academy's status as a contractor—this motion attacks the complaint's factual allegations based on the evidence in the attached Okes Declaration. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) ("When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents,

2

and a limited evidentiary hearing to resolve disputed jurisdictional facts . . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." (cleaned up)); *accord Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F. Supp. 2d 1091, 1094-95 (D. Colo. 2001). To the extent Plaintiffs dispute anything in the Okes Declaration, CDE requests an evidentiary hearing limited to these two issues.

As to Defendants' two remaining arguments—political subdivision standing and third-party standing—this motion facially attacks the complaint's claim to standing. *Cf. Holt*, 46 F.3d at 1002 (noting distinction between facial attack and factual attack); *Cherry Creek Card & Party Shop*, 176 F. Supp. 2d at 1094-95 (same). Both issues are matters of prudential standing subject to review in the Tenth Circuit under Rule 12(b)(6) rather than 12(b)(1). *Kerr v. Polis*, 20 F.4th 686, 699-701 (10th Cir. 2021); *Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 n.1 (10th Cir. 2011). No evidentiary hearing is needed or appropriate for these two issues.

## FACTS

### I.    Facts as Alleged in the Complaint

A "board of cooperative services" or "BOCES" is a type of statutory co-op that "provide[s] supporting, instructional, administrative, facility, community, or any other services" on behalf of participating school districts and higher-ed institutions. Colo. Rev. Stat. §§ 22-5-103(2); *see also Educ. reEnvisioned BOCES v. Colorado Springs Sch. Dist. 11*, 548 P.3d 669, 671 (Colo. 2024). ERBOCES is one such entity. ECF 1 ¶¶ 8, 16. According to ERBOCES, it "provides funding" for educational

3

providers around the state. *Id.* ¶ 8, 19-20. It also "create[s] contract schools."[1] *Id.* ¶¶ 8, 17-23. ERBOCES recently created Riverstone Academy as a "contract school" operated by the vendor Forging Education as "a Christian school that provides an educational program with a Christian foundation." *Id.* ¶ 9, 28-33. At Riverstone Academy, "[c]lasses perform Christian devotions, curricula are informed by a Christian worldview, and students are encouraged with and taught Biblical principles." *Id.* ¶ 31.

According to ERBOCES, it submitted an "annual request for state funding" to CDE, which included Riverstone Academy students. *Id.* ¶ 34. And according to ERBOCES, CDE responded with a letter "stating that Colorado law requires ERBOCES to refuse to contract with any religious school." *Id.* ¶¶ 35-40; *see also id.* ¶¶ 51-58 (allegations about Colorado law). Per the Complaint, CDE's letter called into question the funding for Riverstone Academy. *Id.* Although CDE "approved ERBOCES's funding request," it also opened an audit of ERBOCES's pupil count (which is used for funding purposes). *Id.* ¶¶ 43-46. CDE then declined to clarify its position. *Id.* ¶¶ 47-50. Collectively, ERBOCES says, these actions amount to imminent legal enforcement by CDE, against ERBOCES and Riverstone Academy, prohibiting the creation of a "religious contract school." *Id.* ¶¶ 58-59.

## II.    Facts as Established by the Okes Declaration

The Complaint is wrong about several facts central to Plaintiffs' theories of standing. First, although Plaintiffs are correct that Colorado's Constitution contains

---

[1] "Contract school" is not a defined legal term and, as the term appears to be used in the Complaint, such "contract schools" are not authorized by any statute.

what appears to be a "Blaine Amendment," ECF 1, ¶ 52, they err in describing CDE's enforcement of that clause. CDE does not enforce any prohibition on contracting with religious entities if those entities are providing lawful services. *See* Okes Declaration, ¶¶ 6-10. To the contrary, CDE reviews such contracted services without regard to the religious status of the contractor. *Id.* CDE's pattern of nonenforcement has historically included not only contracts by other school districts, *id.*, but also ERBOCES's own contracts with religious contractors, *id.* ¶ 40. Indeed, that pattern of non-enforcement has already included disregarding Forging Education's religious character when reviewing ERBOCES's request for a school code. *Id.* ¶¶ 24-25. And most importantly, CDE has expressly disavowed any effort to enforce the objected-to restrictions through its currently open audits. *Id.* ¶¶ 37-39.

Second, although Plaintiffs are correct that CDE inquired about ERBOCES's legal authority to operate a religious school, ECF 1 ¶ 35, they err in describing the timing and content of that letter. The letter was sent not in response to ERBOCES's "funding request" but in response to public statements about the educational program that ERBOCES provides at Riverstone Academy. *See* Okes Declaration, ¶¶ 26-29. In fact, Colorado's school finance system does not function on the basis of "funding requests"; CDE does not approve or deny "funding requests" in the first place. *See id.* ¶¶ 11-17. Further, the letter did not tell ERBOCES that state law prohibited it from contracting with religious entities but that state law prohibited *ERBOCES itself* from operating a religious program. *See id.* ¶ 29.

Third, although Plaintiffs are correct that CDE has opened an audit of ERBOCES's 2025-26 school year funding, ECF 1 ¶ 44, they err in implying that the audit is related to Riverstone Academy's religious status. Rather, CDE reviewed the materials of *every single school district in the state*, on the same grounds and asking for the same initial information, in fall 2025. *See* Okes Declaration, ¶¶ 22, 30. Later, ERBOCES was selected for a focused audit due to its unusually large homeschool population (over 8,000 students submitted for public school funding). *Id.* ¶¶ 31-32. That focused audit will include spot-checking the records of 50% of ERBOCES' contract-education students to confirm funding eligibility—only a handful of whom might be students at Riverstone Academy. *Id.* Based on that established process, CDE might request reimbursement of the funding for some or all Riverstone Academy students. *Id.* ¶¶ 34, 36, 39. Yet any such determination will not and cannot be made on the basis of Riverstone Academy's religious nature, because CDE does not ask such questions during its audit processes. *Id.* ¶ 38.

## ARGUMENT

Plaintiffs' claims should be dismissed for four independent reasons. Under Rule 12(b)(1), the complaint should be dismissed (1) in its entirety due to Plaintiffs' lack of pre-enforcement standing, and (2) as to Riverstone Academy individually due to its lack of a valid contract upon which to base standing. And under Rule 12(b)(6), the complaint should be dismissed (3) as to ERBOCES's claims on its own behalf because it is a political subdivision, and (4) as to both Plaintiffs' claims on behalf of third parties because they have pleaded no plausible basis for invoking such standing.

6

I.    **Plaintiffs cannot establish jurisdiction because they face no imminent harm and, in any event, Riverstone Academy is not a contractor.**

"Standing is a prerequisite to a federal court's subject matter jurisdiction[.]" *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1077 (10th Cir. 2025). "To demonstrate standing, a plaintiff must show an injury in fact, causation, and redressability." *Id.* Plaintiffs cannot meet this test because they face no enforcement action and because they failed to execute a contract in the first place.

**A.  Plaintiffs face no enforcement risk at all.**

To show injury-in-fact in a pre-enforcement posture, a plaintiff must show "a credible threat of future prosecution." *Voter Reference Found.*, 160 F.4th at 1078. Credible threats do not exist where the state disavows prosecution. *See Scott v. Allen*, No. 24-1349, 153 F.4th 1088, 1097 (10th Cir. 2025). Such disavowal exists here. Twice, in fact: once in well-established practice, and once again in writing.

First, Plaintiffs are simply incorrect in alleging that CDE enforces any state law prohibiting schools from contracting with religious entities. *See* ECF 1 ¶¶ 51-54. To the contrary, Colorado's public schools often contract with religious providers. Okes Declaration, ¶¶ 6-10, 40. And CDE provides funding to public schools for such contracted services wholly without regard to the religious identity of the contractor. *Id.* CDE even accepted the responsibility to provide funding under the National School Lunch Act directly to religious entities, after the Supreme Court's decision *in Trinity Lutheran*, 582 U.S. 449 (2017). *Id.* ¶ 8. CDE also provided a school code for Riverstone Academy despite knowing of Forging Education's religious character. *Id.* ¶¶ 24-25. Indeed, ERBOCES knows all of this—having signed many contracts with

religious entities, and having never had an audit finding based on the religious identity of the contractors. *See id.* ¶ 40. Despite its longstanding experience of both signing contracts with religious contractors and receiving funding for the contracted services—without any objection from CDE—ERBOCES has nonetheless alleged that such contracts are prohibited by CDE enforcement. This allegation is meritless.

Second, Plaintiffs wholly ignored the express assurance provided by CDE that no enforcement would be taken on the basis of Riverstone Academy's religious status in the recently opened 2025/26 audit. *See* ECF 1 ¶¶ 47-50. As Plaintiffs tell the story, they "asked CDE to clarify whether funding for Riverstone would be clawed back on the basis of the school's religious identity," and "CDE did not respond." *Id.* But that's not true: CDE responded by the date requested—and it expressly assured ERBOCES that the audit would include no review of, nor determinations based on, Riverstone Academy's religious status. Okes Declaration, ¶ 38 (Exhibit J) ("[T]he CDE audit team will conduct its audit pursuant to the 2025 Student October Count Audit Resource Guide. Under the audit guide, the religious status of the entity providing instructional minutes is not relevant to the analysis."). Moreover, the audit notice to which Plaintiffs so object was sent to nearly 40% of the state's school districts (fully 68 of them), not a notice targeting ERBOCES specifically. *Id.* ¶¶ 30-34. Plaintiffs were in such a rush to sue that they have disregarded CDE's express disavowal—the very disavowal that ERBOCES requested.

Plaintiffs do not have pre-enforcement standing. CDE does not enforce any law prohibiting contracts with religious entities—as ERBOCES well knows, having

employed such contracts for years without issue. *See id.* ¶ 40. To be sure, after the director of ERBOCES publicly declared one of its own public schools to be a private entity not subject to the Establishment Clause, CDE directed ERBOCES's attention to Colorado's state-level versions of the Establishment Clause and asked for an explanation of ERBOCES's legal authority to sponsor putatively private education. *Id.* ¶¶ 26-29. And CDE remains doubtful that ERBOCES has such authority. *Id.* But either way, given CDE's (1) longstanding non-enforcement of the state constitution's clause on funding religious entities and (2) express disavowal of any intention to include religious status as a subject for its audit, CDE's earlier letter cannot reasonably be construed as a credible threat of enforcement. It therefore does not provide Plaintiffs with any injury-in-fact sufficient to support standing.

### B.  Plaintiffs failed to contract for services in the first place.

Whether in a pre-enforcement posture or otherwise, Plaintiffs must show an injury-in-fact. *Voter Reference Found.*, 160 F.4th at 1077. Riverstone Academy's claimed injury is CDE's alleged interference with its public contract with ERBOCES. *See* ECF 1 ¶¶ 5, 9, 32-35, 83. But as it turns out, ERBOCES failed to execute a legally valid contract with Riverstone Academy—leaving Riverstone Academy with no contract upon which to base standing.

As a matter of state law, a BOCES can operate a school only following a majority vote of its statutorily authorized members (not a majority of the quorum *present*, but of the total board *whether absent or present*). *See* Colo. Rev. Stat. §§ 2-4-110, 22-5-108(1)(c). And as a matter of state law, actions taken by public boards without a properly constituted quorum are void, *ultra vires* acts. *See Kepley v. People*,

230 P. 804, 806 (Colo. 1924) ("There can be no valid meeting of a board without a quorum."); *Rocky Mountain Nat. Gas, LLC v. Colorado Mountain Junior Coll. Dist.*, 385 P.3d 848, 851 (Colo. App. 2014) (holding ultra vires contracts by municipal corporations are void and unenforceable); *Black v. First Federal Sav. & Loan Ass'n*, 830 P.2d 1103, 1109 (Colo. App. 1992) (same). Here, a BOCES must have "no less than five members" with "at least one member" from each member of the BOCES. Colo. Rev. Stat. §§ 22-5-104(2). These members must, by law, be board members or certain administrators from the members' own entities (*e.g.*, a BOCES board must comprise members of the elected local school boards participating in the BOCES, or their superintendents). *Id.* In addition to those required members, a BOCES may generally have one—and only one—board member from the public at large. *Id.*

At the time it voted to operate Riverstone Academy as a "contract school," ERBOCES did not have a quorum of properly constituted directors. *See* Okes Declaration, ¶¶ 35-36. It had five board members at the time—but only one member was an administrator or board member from the institutions participating in ERBOCES. *Id.* The ERBOCES board instead had four "public at large" members, violating the statutory allowance of one such member. *Id.* Because the ERBOCES board was improperly constituted, its actions were *ultra vires* and thus void *ab initio*—including the putative contract with Riverstone Academy.

To be sure, someday ERBOCES might convene a properly constituted board. And someday, that board might offer a contract to Riverstone Academy, such that Riverstone Academy's hypothetical interests as a public contractor could become

sufficient to support standing. But today is not that day—and this Court does not have jurisdiction to consider hypothetical injuries that conceivably might be capable of occurring at some unknown point in the future.

## II. Plaintiffs cannot establish prudential standing under most of their theories.

Courts must dismiss a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This analysis applies to prudential standing. *Kerr*, 20 F.4th at 699-701. Generally, prudential standing asks "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). The plaintiff bears the burden of presenting a complaint with enough factual details to suggest entitlement to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). ERBOCES flunks this test as to its own asserted rights, and both Plaintiffs flunk it as to their third-party theories.

### A. Political subdivisions are not persons with individual rights under the First Amendment.

Under Tenth Circuit precedent, a political subdivision's claim against its parent state "cannot proceed" if it "rests on a substantive constitutional provision" conveying individual rights. *Kerr v. Polis*, 20 F.4th 686, 696 (10th Cir. 2021); *accord Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628 (10th Cir. 1998) ("It is well-settled that a political subdivision may not bring a federal suit against its parent state based on rights secured through the Fourteenth Amendment."). This is because

11

political subdivisions, as "department[s] of the state," are generally subordinate to the state's aims and goals. *Trenton v. New Jersey*, 262 U.S. 182, 187 (1923); *see Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.").

On its face, this doctrine ends the inquiry into ERBOCES's claims on its own behalf. Claim One invokes ERBOCES's alleged "rights under the Free Exercise Clause." ECF 1 ¶ 79. Claim Two invokes ERBOCES's alleged "rights under the Establishment Clause." *Id.* ¶ 94. ERBOCES does not have any such rights that can be invoked against the State of Colorado. Claims One and Two therefore fail to state any claim upon which relief can be granted to ERBOCES (as does any other aspect of the Complaint that relies on ERBOCES's claimed constitutional rights).

### B. The complaint alleges no plausible basis for third-party standing.

In limited circumstances, third-party standing is permissible if a litigant can show (1) it satisfies the requirements of Article III standing, (2) it has a "'close' relationship" with the person who possesses the right, and (3) there is a "'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004). Plaintiffs claim third-party standing on behalf of the parents and children who attend Riverstone Academy. But the effort fails because Plaintiffs offer no factual allegations beyond a threadbare recital of the second element for such standing—and they offer even less on the third element.

12

A "close" relationship for third-party standing is one where the litigant "is fully, or very nearly, as effective a proponent of the right" as the third party. *Singleton v. Wulff*, 428 U.S. 106, 115 (1976). Common examples of such relationships include lawyer and client, *see U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720-21 (1990), or doctor and patient, *see Aid for Women v. Foulston*, 441 F.3d 1101, 1111-15 (10th Cir. 2006). Closeness requires a "congruence of interests," not necessarily whether the plaintiff and third party are "close" in a colloquial sense. *Powers v. Ohio*, 499 U.S. 400, 414 (1991). Indeed, even a parent's relationship to their own child is insufficient, where the parties lack an "identity of interests." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15 (2004).

The Complaint alleges, in total, one single fact to support its claim of closeness:

> ERBOCES has the requisite relationship to assert [the Free Exercise and Equal Protection rights of religious parents] because it acts like a school district to represent and serve the interests of parents and students in Colorado.

ECF 1 ¶ 100. This cannot be sufficient, because it claims far too much. ERBOCES alleges that it provides educational services statewide. *Id.* ¶ 8. On the theory claimed here, then, ERBOCES has a congruence of interests with *every parent and child in the state of Colorado*, sufficient to assert those private individuals' educationally relevant rights in any lawsuit it wishes. That cannot be true; that's an assertion of general public-interest standing, undermining the very foundations of prudential standing. *Cf. Warth*, 422 U.S. at 500 ("Without such limitations . . . the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and

13

even though judicial intervention may be unnecessary to protect individual rights.").

And yet it's exactly what ERBOCES claims here. Without specific factual allegations

that would allow the Court to infer ERBOCES's "requisite relationship" with a

population somewhat smaller than "parents and students in Colorado," that

relationship has not been plausibly pleaded.

The Complaint fares no better with respect to Riverstone Academy, as to whom

it alleges simply:

> Riverstone has the requisite relationship with its students
> because it is a school and represents the interests of its pupils.

ECF 1 ¶ 100. Again, this claims too much: if this were sufficient, it would mean that

*any* school can bring suit on behalf of *any* educationally relevant rights of students

and their parents. But just as businesses do not automatically have a close

relationship with their customers, *see, e.g.*, *Collins v. Daniels*, 916 F.3d 1302, 1313

(10th Cir. 2019), so too must a school explain why its relationship to its patrons is so

uniquely close as to constitute an identity of interests. "[B]ecause it is a school" is

simply not enough.

On the final element of third-party standing, Plaintiffs have not alleged that

their students are somehow inhibited from representing themselves. *See Singleton*,

428 U.S. at 115-16 ("Even where the relationship is close, the reasons for requiring

persons to assert their own rights will generally still apply."). There are no allegations

of *any* obstacle preventing Plaintiffs' students from asserting their own rights. *Cf. S*

*& S Pawn Shop Inc. v. City of Del City*, 947 F.2d 432, 438 n.5 (10th Cir. 1991) ("One

of the requirements for third party standing, however, is a genuine obstacle that

14

prevents the third party from asserting his or her rights. Appellant does not contend that his customers are prevented from asserting their [own rights].”); *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208-09 (6th Cir. 2011) (“Unlike in the key cases in which the Supreme Court has permitted third-party claims, we discern no indication here that the students or their parents face any obstacle in litigating their rights themselves. There is no evidence that the students or their parents might be deterred from suing.”). The Complaint asks, in effect, for this Court simply to assume that religious parents and students are unable to vindicate their own rights. But under Rule 12(b)(6)'s plausibility standard, the burden of articulating facts to support such a legal conclusion lies with Plaintiffs, not the Court. And they've not attempted to meet that burden.

## CONCLUSION

The complaint should thus be dismissed under Rule 12(b)(1) and (6). No Plaintiff can establish pre-enforcement standing. Riverstone Academy cannot show constitutional standing anyway, pre-enforcement or otherwise. Neither Plaintiff has pleaded a basis for third-party standing to bring Claims Three and Four. And ERBOCES lacks prudential standing to bring Claims One and Two as well.

15

Dated April 24, 2026.

FOR THE ATTORNEY GENERAL

*/s/    Joseph A. Peters*
MICHELLE BERGE, Reg. No. 39299
First Assistant Attorney General
JOSEPH PETERS, Reg. No. 42328
Senior Assistant Attorney General
JANNA FISCHER, Reg. No. 44952
Assistant Solicitor General
Senior Assistant Attorney General

1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6000
michelle.berge@coag.gov
joe.peters@coag.gov
janna.fischer@coag.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the text-size, font, and page limitations set forth in Civ. Practice Standard 10.1(a) and (c).

*/s/ Joseph A. Peters*
Joseph Peters

## CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing **MOTION TO DISMISS UNDER RULE 12(b)(1) & (6)** upon all parties using the court's CM/ECF filing system, this 24th day of April 2026.

*/s/ Dave Sluss*

16